IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | CHAPTER 13 |
| HOWARD ALBERT HAY, JR. and | * | |
| CHRISTY ELIZABETH HAY, | * | |
|     Debtors | * | |
| | * | |
| CHARLES J. DEHART, Standing | * | CASE NO. 1:08-bk-00474MDF |
| Chapter 13 Trustee, | * | |
|     Plaintiff | * | |
| | * | |
| v. | * | |
| | * | |
| HOWARD ALBERT HAY, JR. and | * | |
| CHRISTY ELIZABETH HAY, | * | |
|     Defendants | * | |

**OPINION**

The Standing Chapter 13 Trustee ("Trustee") has objected to the chapter 13 plan proposed by Howard and Christy Hay ("Debtors"), alleging that Debtors have failed to commit all of their future disposable income to the plan. The Trustee asserts that Debtors should not be permitted to deduct as expenses monthly mortgage payments and payments for one of their vehicles because, under the terms of their plan, they intend to surrender the collateral for these loans. For the reasons set forth below, the Trustee's objection to the plan will be overrruled and Debtors' plan will be confirmed.[1]

**Factual Findings**[2]

On February 16, 2008, Debtors filed a joint petition under chapter 13 of the Bankruptcy Code. Debtors' report on Chapter 13 Statement of Current Monthly Income and Calculation of

---

[1] I have jurisdiction to hear this matter pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A),(I) and (O). This Opinion constitutes the findings of fact and conclusions of law made under Fed. R. Bankr. P. 7052.

[2] The Court's factual findings are derived from the Joint Stipulation of Facts filed by the parties.

1

Commitment Period and Disposable Income ("Form 22C") that their current monthly income ("CMI") is $6,793.67. They also report that their household income is above the median for a family of four residing in Pennsylvania. On Form 22C Debtors state that after their deductions are subtracted they have negative disposable income of $873.37. Among their deductions are a monthly mortgage payment of $2,449.00 payable to Everhome Mortgage, a property tax claim of $72.06 per month and a monthly payment to Hampden Township of $15.05, all of which are expenses related to Debtors' residence at 5038 Erbs Bridge Road, Mechanicsburg, Pennsylvania. Debtors' plan provides for the surrender of their interest in the Erbs Bridge Road property, which they vacated in November 2006. Debtors also include on Form 22C a transportation ownership expense deduction of $42.82 per month for payments to PSECU for a loan secured by a 2002 Toyota Tacoma that Debtors also are surrendering. Debtors propose to commit $350.00 per month to their plan, but no payments will be made to Everhome Mortgage or to PSECU either through or outside the plan.

## Discussion

Before the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("BAPCPA"), a chapter 13 debtor was required to commit all "projected disposable income" to payments under the plan for at least three years. 11 U.S.C. § 1325(b)(2004). Disposable income was calculated by deducting from a debtor's actual income expenses "reasonably necessary" for the maintenance and support of the debtor and his dependents. 11 U.S.C. § 1325(b)(2) (2004). The income and expenses reported on schedule I (a debtor's actual income when the petition was filed) and schedule J (a debtor's actual expenses when the petition was filed) provided the starting point for calculating disposable income. *See In re Turner*, 384 B.R. 537, 539 (Bankr. S.D. Ind. 2008); 6 Keith M. Lunden, *Chapter 13 Bankruptcy* § 466.1 (3d ed. 2000 & Supp. 2007-1).

2

Case 1:08-bk-00474-MDF    Doc 62    Filed 11/13/08    Entered 11/13/08 15:36:15    Desc
Main Document    Page 2 of 11

Under the pre-BAPCPA Code, if a trustee objected to a chapter 13 plan, confirmation could not occur unless "as of the effective date of the plan" all claims were paid in full or the debtor committed all disposable income to the plan for three years. 11 U.S.C. § 1325(b)(1)(2004). BAPCPA amended § 1325(b)(1) by requiring that if claims are not paid in full, a debtor must commit all projected disposable income to the plan during the *applicable commitment period* (either three or five years) *to pay unsecured creditors.* (emphasis added) Section 1325(b)(2), which also was amended, now defines the term "disposable income" as "current monthly income received by the debtor . . . less amounts reasonably necessary to be expended for the maintenance and support of the debtor . . . ." 11 U.S.C. § 1325(b)(2)(A)(i). For a debtor with income above the median, like Debtors, expenses that are "reasonably necessary to be expended" are determined by reference to § 707(b)(2).

The primary function of §707(b) is to provide a precise methodology for determining whether the filing of a chapter 7 case is an abuse of the Bankruptcy Code. 11 U.S.C. § 1325(b)(3).[3] As applied in both chapter 7 and chapter 13 cases, § 707(b)(2)(A)(iii) enables a debtor to deduct payments to secured creditors before disposable income is determined. This provision states that "[t]he debtor's average monthly payments on account of secured debts shall be calculated as the sum of – (1) the total of all amounts *scheduled as contractually due* to

---

[3]The incorporation of the means test in § 707(b)(2) into § 1325(b)(3) is awkward at best. In the first instance, § 1325(b)(3) directs that subparagraphs (A) and (B) of § 707(b)(2) are to be used to determine reasonably necessary expenses. However, §707(b)(A)(i) does not address expenses, but sets forth the standard for determining when the presumption of abuse arises in a chapter 7 case, an issue that is completely irrelevant to the determination of deductible expenses in a chapter 13 case. The description of reasonable and necessary expenses is confined to §707(b)(A)(ii)-(iv). The degree to which the incorporation of the chapter 7 standards into the chapter 13 context is inappropriate becomes more pronounced when the deductions specified under §707(b)(2) are mechanically applied to determine the amount of disposable income required to be committed to a chapter 13 plan.

3

secured creditors in each month of the 60 months following the date of the petition. . . divided by 60." 11 U.S.C. § 707(b)(2)(A)(iii)(I) (emphasis added). As the Trustee acknowledges, I previously have construed this section and, in particular, the phrase "scheduled as contractually due." In *In re Mundy*, 363 B.R. 407 (Bankr. M.D. Pa 2007), I found that payments that are "scheduled as contractually due" are payments that a debtor is required to make on certain future dates under the terms of the contract in existence on the petition date. Accordingly, I held that a chapter 7 debtor is permitted to deduct amounts owed to a secured creditor on the petition date even if the debtor intends to surrender the collateral because whether the payments are paid or not, they are "scheduled as contractually due."

The Trustee concedes the holding in *Mundy*, but asserts that § 707(b)(2)(A)(iii) is applied with different results in a chapter 13 case because of the language which surrounds the provision when it is incorporated into § 1325(b)(1).[4] The Trustee advances two arguments in support of this proposition. First, because projected disposable income as described in § 1325(b)(1)(B) is determined "as of the effective date of the plan," as provided in § 1325(b)(1), a debtors' expenses must be determined as of this date. The Trustee also argues that the language "scheduled as contractually due" in § 707(b)(2)(A)(iii)(I) should be understood differently in a chapter 13 case. According to the Trustee, the plan itself is a new contract, which is formed between a debtor and his creditors when it is confirmed. Therefore, once Debtors' plan is confirmed in the within case, the payments to Everhome and PSECU no longer will be "contractually due."

---

[4]In his objection, the Trustee cited other provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("BAPCPA"), but at the hearing on this matter and in the briefs filed thereafter, he relied only on section 1325(b)(1).

4

Debtors respond that the phrase "as of the effective date of the plan" in §1325(b)(1), which precedes the reference to projected disposable income in subparagraph (B) of the same paragraph, refers to *when* the plan must provide for payments and not *how* disposable income is calculated. Debtors further argue that even if the effective date of the plan determines how disposable income is calculated, the result is the same because the plan does not supplant the existing contracts between Debtors and the two affected creditors.

To resolve this matter I first must examine the language of the statute. *Lamie v. United States Trustee,* 540 U.S. 526, 534, 124 S. Ct. 1023, 1030, 157 L. Ed.2d 1024 (2004). "It is well established that when the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms." *Id.* (citations and internal quotations omitted). "[A]s long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute." *In re American Steel Product, Inc.,* 197 F.3d 1354, 1356 (11th Cir. 1999) *quoting United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026 (1989). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.,* 519 U.S. 337, 341, 117 S. Ct. 843 (1997) *quoting Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S. Ct. 3245, 3250 (1982).

> a. *Is a debtor's ability to deduct secured debt payments for purposes of calculating projected disposable income affected by surrender of the collateral?*

Section 1325(b)(1) provides that when a trustee objects to the confirmation of a plan

> the court may not approve the plan unless, as of the *effective date of the plan* – (A) the value of the property to be distributed under the plan . . . is not less than the amount of such claim; or (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that

5

Case 1:08-bk-00474-MDF    Doc 62    Filed 11/13/08    Entered 11/13/08 15:36:15    Desc
Main Document    Page 5 of 11

the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1)(emphasis added). Although projected disposable income is not defined, paragraph (b)(2) specifies that "'disposable income' means current monthly income received by the debtor. . . less amounts reasonably necessary to be expended – (A) (i) for the maintenance or support of the debtor or a dependent of the debtor. . . . 11 U.S.C. § 1325(b)(2)(A)(i). The "amounts reasonably necessary to be expended" referred to in paragraph (b)(2) are determined by reference to subparagraphs (A) and (B) of § 707(b)(2). 11 U.S.C. § 1325(b)(3).

In *In re Vaughn*, 1-06-bk-00788MDF (Bankr. M.D. Pa. 2007)[5], I determined that "projected disposable income" was simply monthly "disposable income" projected out over the applicable commitment period. *Accord In re Bardo*, 379 B.R. 524 (Bankr. M.D. Pa. 2007). The Trustee does not dispute this definition of projected disposable income directly. He does assert, however, that because subparagraph (A) is prefaced by the phrase "as of the effective date of the plan," projected disposable income should be based upon information available on the plan's effective date (i.e., confirmation date) rather than the formula specified in §707(b)(2)(A)(B). This issue was not expressly addressed in *Vaughn*, but the reference in § 1325(b)(1) to the plan effective date does not mandate a different result. Projected disposable income is disposable income projected over the applicable commitment period of the plan. The requirement that projected disposable income be committed to the plan "as of the effective date" only refers to when the income must be committed. Section 1325(b)(1) does not grant bankruptcy courts the

---

[5]The creditor objecting to the debtors' plan in *Vaughn* argued that projected disposable income should be calculated using the information on schedules I and J and that the term "projected disposable income" had a different meaning from "disposable income." The *Vaughn* decision did not address the issue of whether debtors could claim as deductions against income contractual payments secured by property that they intended to surrender.

Case 1:08-bk-00474-MDF    Doc 62    Filed 11/13/08    Entered 11/13/08 15:36:15    Desc
Main Document      Page 6 of 11

authority to develop alternative processes to enable the calculation of a debtor's disposable income that is more reflective of the debtor's actual financial situation on the date of confirmation. As observed by the bankruptcy court in *In re Burmeister*, 378 B.R. 227 (Bankr. N.D. Ill. 2007):

> The trustee's reliance on the phrase "as of the effective date of the plan" is misplaced. He is right that the phrase refers to the date the plan is confirmed. But he is wrong in thinking that the phrase has some effect on the disposable income calculation. As of the effective date" in section 1325(b)(1) only modifies "the plan provides" in section 1325(b)(1)(B), not "disposable income" later in the same section, and so these sections dictate *when* the plan has to provide for payment of all of the debtor's disposable income to unsecured creditors. *What* the debtor's disposable income is, on the other hand, depends on section 707(b)(2).

*Id.,* 378 B.R. at 231 (citing *In re Jones,* 219 B.R. 506, 509 (Bankr. N.D. Ill. 1998); *In re Walker,* 2006 WL 1314125, at *5 (Bankr. N.D. Ga. May 1, 2006) (italics in original); *See In re Hoskings;* 2008 WL 2235350 (Bankr. E.D. Va.).

      b.     *When applied in the context of a chapter 13 case, does the phrase "scheduled as contractually due" in § 707(b)(2)(A)(iii)(I) refer to the plan?*

In *Mundy* I found that § 707(b)(2)(A)(iii)(I) authorized a chapter 7 debtor to include as a deduction on Form 22B monthly payments to a creditor secured in collateral that the debtor intended to surrender. I concluded that "the phrase 'scheduled as contractually due' is not ambiguous . . . [but] refers to the payments due under the contract between the debtor and the secured creditor regardless of the debtor's intent with respect to retention of the collateral or reaffirmation of the debt." *Mundy*, 363 B.R. at 411. In the instant case, the Trustee does not dispute that the payment amounts at issue are "scheduled as contractually due" under the terms of the respective loan documents related to the mortgage and the vehicle purchase. The Trustee argues, however, that the phrase "scheduled as contractually due" in § 707(b)(2)(A)(iii)(I) has a different meaning when applied in the context of a chapter 13 case. Rather than referring to a

7

debtor's prepetition contracts, the Trustee contends that the phrase should be understood as referring to the obligations which flow from a chapter 13 plan. In support of this construction, the Trustee cites the statutory provision that "the provisions of a confirmed plan bind the debtor and each creditor. . . ." 11 U.S.C. § 1327(a). Accordingly, the plan becomes the "new contract" between a debtor and his creditors. *See In re Coleman*, 382 B.R. 759, 764 (Bankr. E.D. Ark. 2008) ("[T]he plan becomes the new contract between the debtor and his creditors.")

There is an attractive logic to the Trustee's argument, and it has received substantial support from bankruptcy courts. *See, e.g., Van Bodegom Smith*, 383 B.R. 441, 449-53 (Bankr. E.D. Wisc. 2008) (the lifting of the automatic stay and the filing of a plan proposing to surrender mortgaged property means there are no payments "scheduled as contractually due" on the effective date of the plan"); *In re Spurgeon,* 378 B.R. 197, 201 (Bankr. E.D. Tenn. 2007) (amounts that would be due under the contract will not be "scheduled as contractually due" after confirmation of the plan); *In re Edmunds*, 350 B.R. 636, 645 (Bankr. D. S.C. 2006) (a debtor's plan is a new contract with creditors and debtors may not take a deduction for a debt unless the plan provides for payment to the secured creditor); *In re Crittendon*, 2006 WL 25547102, *4 (Bankr. M.D.N.C. Sept. 1, 2006) (a confirmed plan is a "new agreement" between the debtor and the creditors). However, as observed by the bankruptcy court in *In re Quigley*, 391 B.R. 294, 306 (Bankr. N.D. W.Va. 2008), describing a plan as a "new contract" is a useful analogy, but equating one with the other is inaccurate. No meeting of the minds or consideration is required for approval of a chapter 13 plan, which may be characterized as a contract only to the extent that it modifies a debtor's rights under the prepetition contract and limits a creditor's ability to enforce its

Case 1:08-bk-00474-MDF    Doc 62    Filed 11/13/08    Entered 11/13/08 15:36:15    Desc
Main Document      Page 8 of 11

prepetition contractual rights.[6] In *Mundy* I concurred with the observation of the bankruptcy court in *In re Walker*, 2006 WL 1314125 (Bankr. N.D. Ga., May 1, 2006) that "'nothing the debtor does or does not do [in his bankruptcy case] changes the fact that scheduled payments remain contractually due' on the date a debtor files his petition." *Mundy*, 363 B.R. at 412 (quoting *Walker* at *4). The petition date, not the effective date of the plan, is the point in time at which the deductions are calculated using Form 22C as required by § 1325(b)(3). *In re Willette*, ___ B.R. ___, 2008 WL 4616887 (Bankr. D. Vt. October 17, 2008). Accordingly, although some courts have found that § 707(b)(2)(A)(iii)(I) should be read differently in the context of a chapter 13 case, I respectfully disagree. *Accord In re Turner*, 384 B.R. 537, 543 fn. 3 (Bankr. S.D. Ind. 2008)(neither the statutory text nor the legislative history support the proposition that "scheduled as contractually due" may have a different meaning when applied in a chapter 13 rather than a chapter 7 case).

---

[6]Although the Trustee has not cited it here, I feel obligated to clarify my usage of a similar contract analogy in my opinion in *In re Turek*, 346 B.R. 350 (Bankr. M.D. Pa. 2006). In *Turek* I quoted *Matter of Penrod*, 169 B.R. 910, 916 (Bankr. N.D. Ind. 1994) for its observation that a chapter 13 plan "is essentially a new and binding contract, sanctioned by the court, between the debtors and their pre-confirmation creditor. *In re Turek,* 346 B.R. at 354 (other citations omitted). In *Turek* I described the plan as a contract for the purpose of illustrating that the interpretation of the plan would be construed against the debtor as the drafter of the document. Courts discussing the contract analogy have recognized that this analogy is flawed and that the prepetition contract between the debtor and the creditor continues to exist post-confirmation and may be relied upon in state court litigation if the plan is not consummated and the case is dismissed. Thus, as acknowledged in *In re Thompson*, 224 B.R. 360 (Bankr. N.D. Tex. 1998), a chapter 13 plan "is appropriately termed a 'new contract' running between the debtor and all of his creditors," but in the event of a dismissal, "11 U.S.C. § 349(b) restores the full pre-petition status quo as to the debtor's property rights, and his creditors' competing claims against them." *Id.* 244 B.R. at 366. A chapter 13 plan cannot be considered a substitute for a commercial contract when a debtor has a right to terminate the plan in the absence of a breach by the creditor. *Quigley*, 391 B.R. at 306 (confirmed plan is not akin to a substituted contract which discharges the duties of both parties under the original contract and binds them to mutual obligations and equilateral remedies).

9

c.  *Is the Trustee left without recourse?*

As observed by the *Burmeister* Court, allowing a debtor to deduct expenses he is not paying does not seem to be the most equitable result. "[W]hy should the [debtors] be able to lower their disposable income, paying unsecured creditors less under their plan, by deducting mortgage payments they are not making and will never make?" *Burmeister*, 378 B.R. at 231. The answer, of course, is that this is the process that has Congress has selected. As Judge Lundin has observed in his respected treatise, in many chapter 13 cases "the actual financial circumstances of the debtor will not be accurately reflected in the strange mathematics of confirmation. . . . [T]he trustee or an allowed unsecured claim holder will have incentive to look for a statutory hook on which to hang a greater distribution entitlement than that produced by historical income figures and artificial mathematical formulas." 6 Lundin, *Chapter 13 Bankruptcy*, § 506.1 at 506-8. The *Burmeister* Court suggested that one possible "statutory hook" was plan modification, specifically noting that a trustee may seek modification of a confirmed plan to increase plan payments. *See* 11 U.S.C. § 1329(a). Except for the new provision in § 1329 addressing plan amendments related to a debtor's purchase of health insurance, this section was not amended significantly by BAPCPA.[7] However, modification of a confirmed chapter 13 plan is not before me. This issue will be decided only if an appropriate motion is filed by the Trustee or a unsecured creditor.

---

[7]The circumstances under which modification of a confirmed plan will be approved is not free from controversy. At least as to bankruptcy cases filed before BAPCPA, courts were divided as to whether a party moving to modify a confirmed plan must show that an unanticipated change of circumstances has occurred in order to justify modification. *Compare In re Murphy*, 474 F.3d 143, 149 (4th Cir. 2007) (showing of substantial post-confirmation change required) with *Barbosa v. Soloman*, 235 F.3d 31, 41 (1st Cir. 2000)(court refuses to adopt substantial and unanticipated test for modification). The Court of Appeals for the Third Circuit has not addressed the issue.

An order overruling the Trustee's objection will be entered.

By the Court,

*/s/ Mary D. France*
Bankruptcy Judge

Date: November 13, 2008

*This document is electronically signed and filed on the same date.*